1  **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                       FOR THE DISTRICT OF ARIZONA

7

8  Kathy L. Jamieson,                    )   No. CV 06-1524-PHX-SMM
                                         )
9              Plaintiff,                 )   **ORDER**
                                         )
10 vs.                                    )
                                         )
11 Lawrence B. Slater, et al.,            )
                                         )
12             Defendants.                )
                                         )
13                                        )
   _____)

14

15        Pending before the Court is Plaintiff Kathy Jamieson's Motion to Disqualify Counsel.

16 (Dkt. 7.)   Plaintiff argues that defendant Lawrence B. Slater's ("Slater") status as co-

17 defendant, counsel, and necessary witness in the present case involves concurrent conflicts

18 of interest that violate Ethical Rules 1.7 and 3.7 of the Arizona Rules of Professional

19 Conduct, thereby requiring his disqualification as counsel for co-defendants James Marchant

20 ("Marchant") and Monica Jagelski ("Jagelski").

21                       **FACTUAL BACKGROUND**

22        On June 13, 2006, Plaintiff filed the instant Complaint against Slater, Marchant, and

23 Jagelski alleging three claims: (i) Violation of A.R.S. § 33-420(A),[1] (ii) Tortious Interference

24  _____

25        [1]    Section 33-420(A), in pertinent part, provides that "[a] person purporting to claim
   an interest in, or a lien or encumbrance against, real property, who causes a document asserting
26 such claim to be recorded in the office of the county recorder, knowing or having reason to know
   that the document is forged, groundless, contains a material misstatement or false claim or is
27 otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum
   of not less than five thousand dollars, or for treble the actual damages caused by the recording,
28 whichever is greater, and reasonable attorney fees and costs of the action."

1   with Business and Contractual Relations; and (iii) Abuse of Process. (Dkt. 1.)  On

2   September 25, 2006, Plaintiff filed an Amended Complaint adding Slater's law firm,

3   Lawrence Slater & Associates, P.C. (collectively with Slater, "Slater"), as a named

4   defendant. (Dkt. 12.)  Plaintiff alleges that her claims arise out of "Defendants' malicious

5   conspiracy to unlawfully acquire [her] real property."  (Dkt. 7 at 2.)  Plaintiff further alleges

6   that, to accomplish this purpose, Marchant and Jagelski each hired Slater to represent them

7   in filing "separate, groundless claims against [her] and to prepare and record separate,

8   groundless *lis pendens* on [her three parcels of] real property."  (Id.)

9            **Marriage of Plaintiff and Marchant**

10          In the summer of 1996, Plaintiff and Marchant began a romantic relationship even

11  though Marchant was still married to Jagelski.  (Id.)  Marchant moved in with Plaintiff in

12  December 1996.  Jagelski's and Marchant's petition for dissolution of marriage was filed in

13  August 1997, and their divorce decree was granted in June 1998.  (Id.)  On May 5, 2001,

14  Plaintiff and Marchant were married.  (Id. at 3.)

15          Plaintiff contends she purchased real property in her own name throughout her

16  relationship with Marchant, and that the three properties at issue here were purchased in

17  November 1997, December 1997, and November 1999 (collectively, the "Properties").  (Id.

18  at 2-3.)  Plaintiff further alleges that she never "gifted, transferred or conveyed any interest

19  in [the Properties] to Marchant before, during or after their marriage."  (Id. at 3.)

20          **Divorce of Plaintiff and Marchant**

21          On May 27, 2003, Plaintiff petitioned for legal separation from Marchant.  Marchant

22  was represented by Slater, and responded by filing *lis pendens* on the Properties  (the "First

23  *lis pendens*) and a request for marital dissolution (the "Dissolution Action").  (Id.)  Plaintiff

24  alleges that, as a result of the First  lis pendens, she was not able to sell the Properties, even

25  though she received offers from buyers.  (Id.)  Plaintiff demanded that the First *lis pendens*

26  be released, but Marchant failed to do so.  (Id.)

27

28                                         - 2 -

1       In the Dissolution Action, Plaintiff filed a motion for summary judgment regarding

2   her right to sole ownership of the Properties.  On February 8, 2006, the Dissolution Court

3   reaffirmed an earlier order granting Plaintiff's motion for summary judgment and awarded

4   the Properties to her alone.  The Dissolution Court rejected Marchant's assertion that an oral

5   promise could serve as the basis for a claim to real property, holding instead that Marchant

6   failed to satisfy the Statute of Frauds, A.R.S. § 33-401(B). (Dkt. 7, Ex.1 at 3.)  Although the

7   Dissolution Court expressly took no position on whether Marchant possessed a civil claim

8   against Plaintiff, it ordered him to "immediately take all steps necessary to effectively

9   remove *lis pendens* filings currently of record." (Id. at 4.)

10      On the same day, Marchant, represented by Slater, filed a quiet title lawsuit against

11  Plaintiff in Pinal County and recorded a second *lis pendens* on the Properties (the "Second

12  *lis pendens*").  (Dkt. 7, Exs. 2-3.)    Marchant also filed a motion for new trial on the

13  Dissolution Court's summary judgment ruling, which was denied on April 21, 2006.

14  Following the denial of his motion for new trial, Marchant removed only the First *lis

15  pendens*.  (Id. at 4.)

16      On April 25, 2006, during trial proceedings in the Dissolution Action, the Court

17  learned about the Second *lis pendens* and ordered Marchant to release it under threat of being

18  held in contempt. (Dkt. 7, Ex. 4.) The Court specifically informed both Marchant and Slater

19  that Marchant was not entitled to an ownership interest in the Properties and ordered

20  Marchant to produce proof that the Second *lis pendens* had been removed by April 27, 2006.

21  (Id. at 43-45.)  The Dissolution Court further ordered Slater and Marchant not to file or

22  otherwise record any additional *lis pendens* on the Properties.  (Id. at 44-45.)

23      On April 27, 2006, Marchant produced a document to the dissolution Court that

24  purported to show he had released the Second *lis pendens* from the Properties. (Dkt. 7 at 5.)

25  Instead of filing the release with the Pinal County Recorder's Office, however, Marchant

26  erroneously filed the release with the Clerk of the Pinal County Superior Court.  (Id.)

27  Plaintiff alleges that Slater knew or should have known that the release Marchant filed did

28

1    not actually release the Second *lis pendens*, which remained a cloud on the Properties' titles,

2    and knew that the Court believed otherwise.  (Id.)

3         On May 9, 2006, Plaintiff's attorney advised Slater of the misfiling, and demanded

4    that it be corrected.  Neither Slater nor Marchant responded.  (Id.)  Plaintiff then filed an

5    Application for Order to Show Cause why Marchant should not be held in contempt for

6    failing to remove the Second *lis pendens*.  On May 23, 2006, two days before the Dissolution

7    Court's hearing on the Order to Show Cause, Marchant released the Second *lis pendens*.

8    (Id.)

9         Plaintiff later discovered that, on May 19, 2006, four days before Marchant released

10   the Second *lis pendens*, Jagelski, represented by Slater, filed a quiet title lawsuit against

11   Plaintiff in Pinal County and filed a *lis pendens* on the Properties (the "Third *lis pendens*").

12   (Dkt. 7, Exs. 5-6.)  Jagelski's complaint alleged that she acquired a community property

13   interest in the Properties through the ownership interest Marchant acquired from Plaintiff

14   during the time he was married to Jagelski.  (Dkt. 7, Ex. 5.)

15        Although a final divorce decree has been issued in the Dissolution Action between

16   Plaintiff and Marchant, Marchant has appealed the Dissolution Court's decision awarding

17   the Properties to Plaintiff.  (Id. at note 3.)

18        In the instant action, Slater has filed an answer on behalf of himself, Marchant, and

19   Jagelski. (Dkt. 5.)  The answer alleges that, at all times Slater acted on behalf of Lawrence

20   Slater & Associates, P.C., which is "a sole and separate entity," and that Slater does not

21   "have personal liability for the acts of the corporation."  (Id. at ¶3.)

22                            **STANDARD OF REVIEW**

23        The district court has a duty and responsibility to control and supervise the conduct

24   of the attorneys practicing before it.  Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir.

25   1996). As the Ninth Circuit Court of Appeals has noted:

26              Whenever an allegation is made that an attorney has
             violated his moral and ethical responsibility, an important
27           question of professional ethics is raised. It is the duty of the

28                                  - 4 -

> district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.

Gas-A-Tron of Ariz. v. Union Oil Co., 534 F.2d 1322,1324 (9th Cir. 1976) (quoting Richardson v. Hamilton International Corp., 469 F.2d 1382 (3d Cir. 1972)).

Although this Court has a duty to protect the integrity of the attorney-client relationship, it "must [also] be solicitous of a client's right freely to choose his counsel" and be wary of disqualification motions "interposed for tactical reasons[.]" See Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. 1983) (citations and internal quotations omitted). Thus, a party moving for disqualification must satisfy "a high standard of proof." Id. at 791; Sauer v. Xerox Corp., 85 F.Supp.2d 198, 199 (W.D.N.Y. 2000); Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co., 264 F.Supp.2d 914, 918 (N.D.Cal. 2003) (because "a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored," but, "[a]t the same time, 'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar'") (citation omitted). Even though a "high standard of proof" is imposed, however, "any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." LaSalle Nat'l Bank v. County of Lake, 703 F.2d 252, 257 (7th Cir. 1983).

Attorneys are bound by the local rules of the court in which they appear. The United States District Court for the District of Arizona has adopted the Arizona Rules of Professional Conduct, which consist of the Model Rules of Professional Conduct of the American Bar Association with some modifications (the "Rules of Professional Conduct"). See LRCiv 83.2(d); Research Corp. Techs., Inc. v. Hewlett-Packard Co., 936 F.Supp. 697, 700 (D.Ariz. 1996). When applying the Rules of Professional Conduct in the context of motions to disqualify opposing counsel, the Arizona Supreme Court has counseled that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the

1   attorney-client relationship of his opponent." <u>Alexander v. Superior Court In and For</u>
2   <u>Maricopa County</u>, 685 P.2d 1309, 1313 (Ariz. 1984).  Arizona courts have also advised
3   reviewing courts to "view with suspicion" motions by opposing counsel to disqualify an
4   attorney based upon a purported conflict of interest. <u>Villalpando v. Reagan</u>, 121 P.3d 172,
5   175 (Ariz.App. 2005) (quoting <u>Gomez v. Superior Court</u>, 717 P.2d 902, 905 (Ariz. 1986)).

6                                 **DISCUSSION[2]**

7        Relying on Ethical Rule 1.7, Plaintiff argues that Slater should be disqualified from
8   representing defendants Marchant and Jagelski in the present case because he is also a
9   defendant, and thus such representation involves concurrent and unwaiveable conflicts of
10  interest. <u>See</u> ER 1.7(a).  In addition, Plaintiff argues that Slater should be disqualified under
11  Ethical Rule 3.7 because an attorney is not permitted to "act as advocate at a trial in which
12  [he] is likely to be a necessary witness." <u>See</u> ER 3.7(a).

13       Defendants argue that Plaintiff's Motion to Disqualify should be denied because
14  (i) Plaintiff lacks standing to raise "alleged potential conflicts on behalf" of Marchant and
15  Jagelski (dkt. 8 at 3); (ii) "Prior to the filing of Jagelski's Complaint, [Slater] obtained a
16  consent from Marchant and Jagelski, waiving any conflict between them, and consenting to
17  [his] representation of Jagelski" (<u>id.</u>); and (iii) Defendants intend to file a motion to dismiss
18  Plaintiff's Complaint because "no . . . claim [for maliciously conspiring] exists" (<u>id.</u>).  The
19  Court rejects each of Defendants' arguments and will grant the Motion to Disqualify.

20  **A.    <u>Standing</u>**

21       Although the Arizona Rules of Professional Conduct and Arizona case law govern
22  motions to disqualify, federal law dictates the question of standing. <u>See</u> <u>Fiedler v. Clark</u>, 714
23  F.2d 77, 80 (9th Cir. 1983) (state law cannot alter federal standing requirements). The
24  requirements for Article III standing, which apply to anyone seeking relief from a federal

25  _____

26       [2]  Unless otherwise stated, all references to "Ethical Rules" and citations to "ER" refer
    to the Arizona Rules of Professional Conduct, as codified at Rule 42, Rules of the Arizona
27  Supreme Court. <u>See</u> 17A A.R.S., Sup.Ct.Rules, Rules of Professional Conduct, Rule 42.

28                                    - 6 -

1   court, are that a party must have personally suffered an "injury in fact," which is causally

2   related to the conduct at issue and redressable by a favorable decision of the court. See Lujan

3   v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The "[s]tanding doctrine [also]

4   embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such

5   as the general prohibition on a litigant's raising another person's legal rights."  Allen v.

6   Wright, 468 U.S. 737, 751 (1984).

7         The majority view on the standing issue is that only a current or former client of an

8   attorney has standing to complain of an attorney's representation of interests adverse to that

9   current or former client.  Colyer v. Smith, 50 F.Supp.2d 966, 969 (C.D.Cal. 1999) (citing In

10  re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976)).  However, even

11  courts embracing the majority rule acknowledge the possibility of non-client standing where

12  an "ethical violation" is "manifest and glaring" or "open and obvious," confronting the court

13  with a "plain duty to act."  Yarn Processing, 530 F.2d at 89.

14        The minority view is that a non-client litigant may bring a motion to disqualify

15  opposing counsel.  See Colyer, 50 F.Supp.2d at 970-71.  Relying on the well-recognized

16  power of courts to control the conduct of attorneys practicing before them, courts embracing

17  the minority view "locate in the ethical standards and reporting duties imposed on attorneys

18  by the Model Code of Professional Responsibility and the Model Rules of Professional

19  Conduct a source of 'rules-based' standing in attorneys seeking to disqualify opposing

20  counsel for ethical violations."  Id. at 970.  For example, in Kevlik v. Goldstein, 724 F.2d

21  844 (1st Cir. 1984), the First Circuit Court of Appeals rejected the view that only an

22  aggrieved client could move to disqualify a disloyal current or former attorney, and held that

23  the non-client plaintiffs' attorney had standing to bring a motion to disqualify opposing

24  counsel.  Id. at 847-48.  The Kevlik Court relied on the Model Code of Professional

25  Responsibility's requirement that attorneys with knowledge of ethical violations report those

26  violations to "a tribunal or other authority empowered to investigate or act upon such

27  violation." Id. at 847.  Because the plaintiffs' attorney in Kevlik was empowered, and indeed

28                                    - 7 -

1   obligated, to report the conflicted status of opposing counsel, he could properly do so by

2   filing a motion to disqualify. Id.; see also Melamed v. ITT Continental Baking Co., 592 F.2d

3   290, 294 (6th Cir. 1979) ("[defense] counsel . . . had a right and arguably a duty to call the

4   attention of the District Judge to the possible conflict of interest in this case"), disapproved

5   on other grounds, Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379 n.15 (1981).

6          Unfortunately, neither the United States Supreme Court nor the Ninth Circuit Court

7   of Appeals has addressed whether the standing doctrine precludes a non-client party from

8   moving to disqualify the opposing party's counsel on the grounds of a conflict of interest.

9   For three reasons, however, the Court finds that Plaintiff has established a personal stake in

10  her Motion to Disqualify that provides her with standing to request that Slater be disqualified

11  from representing Marchant and Jagelski.

12         First, Plaintiff has demonstrated that an ethical breach of conduct by Slater in

13  representing Marchant and Jagelski would likely have a negative impact on her interest in

14  obtaining a just and lawful determination of the claims at issue.  As a result, the prudential

15  barrier to litigating the rights and claims of third parties is overcome by the Court's inherent

16  obligation to manage the conduct of attorneys who appear before it and to ensure the fair

17  administration of justice.  See Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991); see

18  also Gas-A-Tron of Ariz., 534 F.2d at1324 (whenever an allegation is made that an attorney

19  has violated his moral and ethical responsibility "[i]t is the duty of the district court to

20  examine the charge"); Yarn Processing, 530 F.2d at 89 (where an "ethical violation" is

21  "manifest and glaring" or "open and obvious," confronting the court with a "plain duty to

22  act," a non-client litigant's motion to disqualify should be addressed).

23         Second, permitting Plaintiff – a non-client litigant – to raise the issue of

24  disqualification is particularly appropriate in the District of Arizona because the Arizona

25  Rules of Professional Conduct require attorneys to report ethical violations comparable to

26  the ethical rules in the Model Code of Professional Responsibility relied on by the Kevlik

27  Court and others.  See Ethical Rule 8.3(a) ("A lawyer who knows that another lawyer has

28                                    - 8 -

committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority. . . ."). Because Ethical Rule 8.3(a) authorizes and requires Plaintiff's attorney to report the conflicted status of defendant Slater, he could properly do so by filing the instant Motion to Disqualify on Plaintiff's behalf.

Third, the Court has carefully scrutinized the record in the present case. There is no evidence that Plaintiff's Motion to Disqualify has been filed for tactical reasons. Plaintiff promptly moved for disqualification, before discovery has been conducted and before a trial date has been set. Defendants' conclusory assertions of improper motives are therefore rejected.

**B.**   **Disqualification of Slater Under Rule 1.7**

Plaintiff argues that Slater should be disqualified from representing co-defendants Marchant and Jagelski, because such representation involves irreconcilable and concurrent conflicts of interest that cannot be waived. Although it is too early in this litigation to anticipate the arguments that could be asserted by Marchant and Jagelski against *each other*, it is clear that, as a co-defendant, *Slater's personal interests* in this matter present concurrent conflicts with the *interests of both Marchant and Jagelski* that cannot be waived.

**Concurrent Conflicts of Interest**

Ethical Rule 1.7 of the Arizona Rules of Professional Conduct, the general rule for attorney conflicts of interest, provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1)   the representation of one client will be directly adverse to another client; or
>
> (2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or *by a personal interest of the lawyer.*

- 9 -

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if each affected client gives informed consent, confirmed in writing, and:

    (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2)    the representation is not prohibited by law; and

    (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

ER 1.7 (emphasis added).  A conflict of interest will be found to exist "if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."   ER 1.7, Comment 8.  In such a situation, the conflict effectively forecloses alternatives that would otherwise be available to the client.  In addition, a "lawyer's own interests should not be permitted to have an adverse effect on representation of a client.  For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Id., Comment 10.

    In the present case, the interests of Jagelski and Marchant conflict with the interests of Slater because the actions of Slater while he represented Marchant and Jagelski in lawsuits against Plaintiff is the *primary wrongdoing* for which Plaintiff seeks to recover damages. See Dkt. 12 at ¶¶ 58-60 (abuse of process claim).  Because Slater is a named co-defendant in the present case, there is a significant risk that his ability to consider, recommend, and carry out an appropriate course of action on behalf of Marchant and Jagelski will be materially limited as a result of his exposure to personal liability.  See ER 1.7, Comment 8. Moreover, given the allegations that "separate, groundless claims" were filed against Plaintiff in order to "prepare and record separate, groundless *lis pendens"* against the Properties (dkt.

12 at ¶1), Slater cannot reasonably be expected to provide Marchant or Jagelski with an unbiased assessment of the conduct he engaged in on their behalf because any admission that the claims or *lis pendens* were improper could expose him to liability for malpractice (to Marchant and Jagelski) or a disciplinary action by the Arizona State Bar.  See ER 1.7, Comment 10.  From an objective perspective, Slater's interest in justifying the legal actions he engaged in while representing Marchant and Jagelski will undoubtedly cloud his ability to examine alternatives which may be available to each of them.  Indeed, Slater may well be faced with the choice of either implicating one or both of his clients as the driving force behind the conduct at issue, or exonerating his clients by claiming that he engaged in such conduct without their knowledge or authorization.

In addition to the fact that Slater's personal interests (i.e., exposure to civil liability and/or suspension from the bar) are at issue in the present case, the representation of multiple clients in the same matter requires special scrutiny because "if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination." ER 1.7, Comment 28.  In the present case, given the differing roles of Slater, as the attorney, and Marchant and Jagelski, as clients, "[a] conflict may exist by reason of substantial discrepancy in [their] testimony, incompatibility in positions in relation to [each other] or the fact that there are substantially different possibilities of settlement of the claims . . . in question." ER 1.7, Comment 22.  For example, Jagelski's interests conflict with Slater's interests because, based on his participation in the Dissolution Action, Slater knew or should have known that Jagelski could not seek an ownership interest in the Properties through Marchant's non-existent ownership interest, and thus he should have advised her that filing a *lis pendens* on the Properties could expose her to significant damages.  (Dkt. 7 at 9.)  This prospect provides Slater with a powerful motivation to structure his advocacy so as to avoid exposing his own potential liability, thus generating a significant conflict of interest.  Because these conflicts exist in the case of co-defendants, they can only be exacerbated by a co-defendant serving as counsel for

1    the other defendants.  In the present case, such a concurrent conflict remains inherent in the

2    dual role that Slater occupies (co-defendant and counsel) because Slater's conduct is at issue

3    in the present case.  Thus, at best, it would likely be impossible for him to provide a detached

4    view of the case to Marchant and Jagelski.

5              **Informed Written Consent**

6              Ethical Rule 1.7(b) provides that, notwithstanding the existence of a concurrent

7    conflict of interest, a lawyer may represent clients who provide informed written consent so

8    long as the lawyer reasonably believes that he will be able to provide competent and diligent

9    representation to each client. ER 1.7(b)(1).  The lawyer's "reasonable belief" that a conflict

10   with his own interests will not adversely affect his representation of the clients is an

11   objective, rather than a subjective, belief.

12             In the present case,  Defendants assert only that, "[p]rior to the filing of Jagelski's

13   Complaint, [Slater] obtained a consent from Marchant and Jagelski, waiving any conflict

14   between them, and consenting to [his] representation of Jagelski" in her case against Plaintiff.

15   (Dkt. 8 at 3.)  Defendants have not demonstrated, nor do they contend, that Slater has

16   obtained the informed written consent of *both* Marchant and Jagelski to represent them *in the*

17   *present case*, as required by Ethical Rules 1.7(b) and 1.0(b) and 1.0(e).   Similarly,

18   Defendants have not shown that each of Marchant and Jagelski are aware of the relevant

19   circumstances and the material and reasonably foreseeable ways that concurrent conflicts

20   with Slater could adversely affect them.  See ER 1.7, Comment 18.

21             Moreover, even assuming informed written consent had been provided by Marchant

22   and Jagelski, the Court finds that Slater's position as both a co-defendant and counsel to the

23   remaining defendants is so egregiously untenable that no reasonably competent lawyer

24   providing objectively reasonable advice would recommend his client accept representation

25   from Slater.  Thus, any informed written consent to the concurrent conflicts of interest

26   identified here would be ineffective.  See ER 1.7(b).  As a result, the Motion to Disqualify

27   will be granted.

28

1   **C.      Disqualification of Slater Under Rule 3.7**

2          Alternatively, the Court finds that Slater should be disqualified under Ethical Rule 3.7.

3   Ethical Rule 3.7(a) of the Arizona Rules of Professional Conduct provides that "[a] lawyer

4   shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness

5   unless:  (1) the testimony relates to an uncontested issue; (2) the testimony relates to the

6   nature and value of legal services rendered in the case; or (3) disqualification of the lawyer

7   would work substantial hardship on the client." ER 3.7(a)(1)-(3).  Moreover, if there is likely

8   to be substantial conflict between the testimony of a client and his lawyer, the "representation

9   involves a conflict of interest that requires compliance with ER 1.7." ER 3.7, Comment 6.

10  An attorney is not absolutely prohibited from testifying on behalf of a client, but should only

11  do so when the testimony relates to an uncontested issue or the nature and value of legal

12  services rendered in the case.  ER 3.7(a)(1)-(2).  Where the evidence an attorney is likely to

13  present is "material, necessary for the just determination of the issues, and unavailable from

14  other sources, the court may order [such] attorney's disqualification."  See Cottonwood

15  Estates, Inc. v. Paradise Builders, Inc., 624 P.2d 296, 302 (Ariz. 1981)(analyzing the

16  substantial hardship requirement in DR 5-101(B)(4), the predecessor to ER 3.7).

17         It is clearly foreseeable that Slater will testify in the present case.  In addition to being

18  a named defendant, Slater is a critical fact witness because of the allegations that he played

19  a key role in both filing, and advising Marchant and Jagelski to file, the underlying lawsuits

20  and  the lis pendens.  See dkt. 12 at ¶1.  Moreover, the issues in question are not uncontested,

21  nor  are they limited to the nature and value of Slater's services.  See dkt. 12.  Finally, the

22  Court is not persuaded that Defendants have satisfied Ethical Rule 3.7(a)(3)'s "substantial

23  hardship" exception simply because Slater "has been representing Marchant regarding these

24  properties for over three years" and "[i]t would be very costly for new counsel to be brought

25  in to represent Marchant and Jagelski."  (Dkt. 8 at 3.)  Plaintiff has demonstrated that Slater

26  will provide evidence material to the determination of the claims to be litigated, that such

27  evidence is unobtainable elsewhere and necessary for a just determination of the issues, and

28                                                    - 13 -

that his testimony is or may be prejudicial to Marchant and Jagelski.  <u>See</u> dkt. 7, Exs. 1-6. Thus, the substantial hardship exception does not apply here.  <u>See</u> <u>Cottonwood Estates, Inc.,</u> 624 P.2d at 302.  For these reasons, Slater's continued representation of Marchant and Jagelski in the present case is incompatible with Ethical Rule 3.7(a).  Therefore, Plaintiff's Motion to Disqualify will also be granted under Ethical Rule 3.7(a).

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Plaintiff's Motion to Disqualify Counsel. (Dkt. 7.)

**IT IS FURTHER ORDERED** that, no later than December 8, 2006, Lawrence B. Slater, of Slater & Associates, PC, shall file a formal Notice with the Court informing James and Jane Doe Marchant and Monica and John Doe Jagelski that Lawrence B. Slater and Slater & Associates, PC have been disqualified as counsel of record and no longer entitled to represent them in the present case.

**IT IS FURTHER ORDERED** that, in order to allow both Marchant and Jagelski sufficient time to locate suitable replacement counsel, all litigation in the present case shall be stayed until December 15, 2006.

DATED this 27th day of November, 2006.

Stephen M. McNamee
United States District Judge

- 14 -