**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy L. Jamieson, an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Lawrence B. Slater, et al.,<br><br>　　　　Defendants.<br>_____<br>Monica Jagelski,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Kathy Marchant (a.k.a Jamieson),<br><br>　　　　Defendant.<br>_____<br>James Bret Marchant, Oasis Pipeliner, LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Kathy Jamieson, James Jamieson, and Kassie Kientz,<br><br>　　　　Defendants.<br>_____ | No. CV 06-1524-PHX-SMM<br>No. CV 06-2261-PHX-SMM<br>No. CV 06-2631-PHX-SMM<br>(consolidated)<br><br>**ORDER** |

1   Before the Court is Kathy Jamieson's ("Jamieson") Motion for Reconsideration (Doc.
2   184).¹ Jamieson seeks reconsideration of this Court's Order of September 23, 2009 (Dkt.
3   56), whereby the Court denied Jamieson's Renewed Motion for Summary Judgment as to the
4   claims of Monica Jagelski ("Jagelski"). Although Kathy Jamieson ("Jamieson") requests
5   oral argument, the Court finds that oral argument would not aid the Court in its
6   determination, and thus, the request is denied. See LRCiv 7.2(f). After considering
7   Jamieson's motion, the Court makes the following ruling.

    The Federal Rules of Civil Procedure do not recognize a "motion to reconsider," but
a litigant subject to an adverse judgment may file a motion to alter or amend the judgment
under Rule 59(e). Under the "law of the case doctrine," courts do not "reexamine an issue
previously decided by the same or higher court in the same case." Lucas Auto. Eng'g, Inc.
v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001). A court may have
discretion to depart from the law of the case and reexamine an issue where: (1) the first
decision was clearly erroneous; (2) there has been an intervening change of law; (3) the
evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest
injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir.
1997). A district court abuses its discretion when it applies the doctrine of the law of the
case without one of these five requisite conditions. Thomas v. Bible, 983 F.2d 152, 155 (9th
Cir. 1993). A motion for reconsideration may not be used to ask the Court "to rethink what
the court had already thought through – rightly or wrongly." See Defenders of Wildlife v.
Ballard, 73 F. Supp. 2d 1094, 1115 (D. Ariz. 1999) (citations omitted).

    The Local Rules of Civil Procedure further provide, in pertinent part, that a court will
ordinarily deny a motion for reconsideration "absent a showing of manifest error or a
showing of new facts or legal authority that *could not have been brought to its attention
earlier with reasonable diligence*." LRCiv 7.2(g)(1) (emphasis added). Furthermore, the

---

¹ No response was filed pursuant to Local Rule 7.2. LRCiv 7.2(g)(2) ("No response to a motion for reconsideration and no reply to the response may be filed unless ordered by the Court"). The Court did not order a response.

motion "shall point out with specificity . . . any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." Id. Moreover, "no motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." Id. Failure to comply with Local Rule 7.2(g)(1) may be grounds for the denial of the motion. Id.

On September 23, 2009, the Court denied Jamieson's Renewed Motion for Summary Judgment finding that a genuine issue of material fact existed as to whether Jagelski was aware of the Ellsworth and Sangria properties at the time of her divorce from Bret Marchant ("Marchant") (Doc. 183, 19:27-20:6). If Jagelski lacked knowledge of the properties, she could not waive her property rights when she signed the Marital Settlement Agreement ("MSA") (Id.). Furthermore, credibility issues regarding the conflicting testimony of Jagelski and Marchant were more appropriate for a jury (Id.). Additionally, the Court found that a question of fact remained as to the source of the funds used to purchase the Ellsworth and Sangria properties and whether they were community or Marchant's separate property (Id.).

On October 6, 2009, Jamieson filed the present Motion for Reconsideration (Doc. 184). Jamieson claims that the Court made two errors: (1) the Court's interpretation of the MSA presumed that Section 22 of the agreement was a general release/waiver (Id. at 3-5), and (2) the Court failed to consider the entire record regarding whether community funds were used to purchase the Sangria and Ellsworth properties (Id. at 5-7).

First, Jamieson argues that the Court's treatment of Section 22 of the MSA as a general release/waiver was erroneous because the parties intended to release and waive their rights to all property, both known and unknown (Id. at 4:1-2). Furthermore, the parties expressly assumed the risk of undisclosed properties (Id. at 4:2-3). According to Jamieson, where the language of a contract is unambiguous, it must be given effect as written (Id. at 3:16-19).

The portion of the MSA in dispute, Section 22, is titled "Disclaimer Regarding Discovery and Related Disclosures." (Doc. 136, Ex. A, § 22). The provision reads in part:

> The parties specifically agree and acknowledge that this matter has been fully negotiated and prepared pursuant to the representations of Husband to Wife and Wife to Husband as to the status of their respective financial estates . . . Counsel for both parties have informed both Husband and Wife that normally it would be appropriate in any divorce case that there be discovery procedures instituted . . . The parties have been informed by counsel that such discovery is normal and routine and is utilized in order to independently verify through sworn statements and testimony the existence of assets, liabilities, and the value of the business . . . The parties acknowledge that they run a substantial risk based upon having a contract (Marital Settlement Agreement) negotiated without the benefit of discovery . . . Both parties agree that they will assume the risk and any potential damage or injury that results from the fact that they have entered into this Agreement without benefit of discovery or other disclosure requirements that would be mandated under the Arizona Rules of Civil Procedure.

(Id.).

While Jamieson cites several cases purportedly demonstrating the Court's error in interpreting Section 22, the cases are distinguishable factually. First, Petro-Ventures is a case arising in the securities law context. In that case, investor Petro-Ventures brought suit against a limited partnership and general partner for violation of federal securities law. Petro-Ventures v. Takessian, 967 F.2d 1337 (9th Cir. 1992). Previously, the parties had signed a settlement agreement that included the following release provision: [the parties] "hereby release any and all claims, demands, damages or causes of action they might have, each against the other, based upon the negotiations for sale and the conveyance of the producing oil and gas properties . . . regardless of whether or not said claims have been set forth in [this] litigation." Id. at 1338. When potential violations of federal securities laws later were discovered, Petro-Ventures brought suit and argued that unknown claims under federal securities law could not be released, even by the execution of a settlement agreement that released all known and unknown claims. Id. at 1339. The Ninth Circuit disagreed, and held that the parties' settlement agreement, which released all known and unknown claims in the context of ongoing litigation, released all claims for potential securities law violations. Id. at 1343. In reaching this decision, the court emphasized that the language of the release unambiguously conveyed the intent of the parties to release both known and unknown

claims, and that the release was the product of negotiations between parties with equal bargaining power and ready access to counsel. Id. at 1342-43.

In the second case cited by Jamieson, Yu-Hwa Pa, the court held that waivers in commercial agreements involving "ordinary business relations" are generally given effect as written, provided the scope of the waiver is clear from the language of the agreement. Yu-Hwa Pa v. Doyle, 240 Fed. Appx. 757, 759 (9th Cir. 2007). The court found that the language of the waiver unambiguously covered all claims and potential claims. Id. Besides the clear language, the court stated it was standard business agreement between two experienced parties. Id. Yu-Haw Pa is an unpublished decision that is not binding on this Court. The case is distinguishable because it occurs in the business context between parties dealing at arms length, rather than between the special relationship of spouses. Here, however, the parties were not engaging in "ordinary business relations" when they signed the MSA; instead, they were settling the parties' rights as to their community and separate property.

In Dietz v. Lopez, after a collision between two vehicles, the injured motorist wrote a letter to the other driver's insurance company, Allstate Insurance, outlining the expenses incurred due to the accident. 179 Ariz. 355, 356, 879 P.2d 2,3 (Ct. App. 1994). The adjustor then explained that no payments would be made until treatment was complete and the injured motorist was able to settle the entire claim. Id. A succession of letters followed between the motorist and Allstate where the motorist expressed a desire to settle the claim, despite his lack of improvement and the doctors' inability to offer a diagnosis. Id. A settlement for $18,000 finally was reached with Allstate in satisfaction of "any and all claims arising from bodily injury and property damage caused by accident." Id. at 356-57, 879 P.2d at 3-4. Sometime later, the motorist was diagnosed with more serious injuries requiring expensive reconstructive surgery. Id. at 357, 879 P.2d at 4. After attempts to have Allstate reopen the claim failed, the motorist sued the other driver. Id. After the lower court entered summary judgment for defendant, the plaintiff argued on appeal that the judgment should be set aside

- 5 -

because the settlement agreement was based on a mutual mistake of fact regarding the nature and extent of the plaintiff's injuries. Id. The court of appeals disagreed, and held that the facts demonstrated that the plaintiff contemplated more serious injuries when he accepted the settlement, and that he accepted the money in order to quickly settle the matter instead of waiting until the source of his injuries was discovered and treated. Id. at 358, 879 P.2d at 5. Thus, summary judgment was appropriate. Again, Dietz is distinguishable because it is an Arizona personal injury case resulting from an automobile accident.

Each of the cases cited by Jamieson occurred in a business setting between strangers at arm's length. The present case, in contrast, deals with a settlement of property rights made by a husband and wife in connection with a divorce, and thus, stands on different footing. None of the cases cited address the situation where one spouse has fraudulently hidden properties from the other by placing title in a third party. Marchant's alleged efforts to conceal the properties were aimed at ensuring that Jagelski would not discover her community property interest during the divorce. Although Jagelski and Marchant assumed the risk of not conducting discovery, it is not clear that discovery would have aided Jagelski as Marchant concealed the properties by placing them in Jamieson's name. Thus, Jamieson's first argument for reconsideration fails.

Second, Jamieson argues that the Court erred in not considering her Consolidated Statement of Facts in Opposition to the Motions for Summary Judgment of James Bret Marchant and Monica Jagelski (Doc. 184, 6:2-6). That document was filed on September 18, 2009, several days prior to the Court's September 23rd ruling on Jamieson's summary judgment motion (Id.). Jamieson contends that her Statement of Facts contains unrefuted evidence that no Jagelski/Marchant marital community funds were used in the purchase of either the Sangria or Ellsworth properties (Id. at 6:6-10). If no community funds were used, argues Jamieson, then Jagelski's claims fail as a matter of law regardless of the contents of the MSA (Id. at 7:2-5). According to Jamieson, the Court had a duty to review the entire

record because the motions were, in effect, cross-motions for summary judgment asking the Court to declare judgment as a matter of law in each party's favor (Id. at 6:13-20).[2]

The parties did not denominate their motions as Cross-Motions for Summary Judgment. However, even if they had, the Court's ruling would not change. Since Jamieson filed her Motion for Reconsideration, the Court has ruled on several more summary judgment motions brought by Jagelski, Marchant, and Jamieson (Doc. 202, 203, 204). As a result, the Court is familiar with the totality of the parties' evidence dealing with the source of the funding for the Ellsworth and Sangria properties. Upon its examination, the Court finds that there remains an issue of material fact as to whether the funds used were Marchant's separate funds or Jagelski/Marchant marital community funds. The invoices submitted by Jamieson have handwritten notations as to where the funds used to pay it originated (i.e., Desert Schools Federal Credit Union checking account), but there are no canceled checks or banking records to verify the amounts or source of the funds (Doc. 182, Ex. A).

Accordingly,

**IT IS HEREBY ORDERED DENYING** Kathy Jamieson's Motion for Reconsideration re: Renewed Motion for Summary Judgment as to Claims of Monica Jagelski (Doc. 184).

---

[2] Due to the consolidation of three cases, there were six summary judgment motions filed in the present case: (1) Motion for Summary Judgment, filed by Lawrence B. Slater, Jane Doe Slater, and Slater & Associates, PC (Doc. 133); (2) Motion for Summary Judgment as to Claims of Monica Jagelski, filed by Kathy Jamieson (Doc. 135); (3) Supplemental Motion for Summary Judgment as to Claims of Monica Jagelski, filed by Kathy Jamieson (Doc. 159); (4) Motion for Summary Judgment for Claims Asserted Against Her by Kathy Jamieson, filed by Monica Jagelski (Doc. 161); (5) Motion for Partial Summary Judgment as to Claims of Bret Marchant, filed by Kathy Jamieson (Doc. 162); and (6) Motion for Summary Judgment as to Claims Asserted Against Them by Kathy Jamieson, filed by James Bret Marchant and Jane Doe Marchant (Doc. 166). The Court has now ruled on all six motions (Doc. 175, 176, 183, 202, 203, 204).

DATED this 29th day of April, 2010.

_____
Stephen M. McNamee
United States District Judge